**UNITED STATES**

v.

**James P. KEITHAN, 048 50 7639, Corporal E-4, U. S. Marine Corps.**

**NCM 76 0410.**

U. S. Navy Court of Military Review.

Sentence Adjudged 13 Nov. 1975.

Decided 6 Dec. 1976.

Edward N. Lerner, Edwards Building, 230 Hartford Turnpike, Vernon Circle, Vernon, Connecticut, Individual Counsel.

Jan S. Weinstein, Suite 100, 1760 Columbia Road N.W. Washington, D. C. Individual Counsel.

CDR A. W. Eoff II, JAGC, USN, Appellate Defense Counsel.

CAPT Mark M. Humble, USMCR, Appellate Government Counsel.

Before MURRAY, DUNBAR and GREGORY, JJ.

MURRAY, Senior Judge:

This case was previously before the Court (*United States v. Keithan*, No. 76 0410 (N.C.M.R. 29 March 1976)) and was returned to the supervisory authority for further action under Article 65(b), UCMJ, 10 U.S.C. § 865(b), principally due to the inadequacy of the staff judge advocate's review with respect to a lack of discussion of an affirmative defense raised at trial.

The record is once again before the Court, and while we find that the matter still has not been fully explored on the subsequent review, a determination can be made on the record without returning the case for any further action.

At trial, the appellant defended upon the grounds of a lack of knowledge that he wrongfully possessed the drug in question (marijuana), which the evidence of record indicates belonged to another person who was a passenger in the vehicle of the appellant. The issue is far broader than mere knowledge, however, since it runs to actual or constructive possession in addition to the knowledge question. As Senior Judge Evans pointed out in the previous opinion of this Court:

" . . . 'possession' means more than being where the action is; it involves the exercise of dominion and control over the thing allegedly possessed; it is not enough to place him [the accused] in the presence of other persons having possession to impart possession to him." *United States v. Smith*, 46 C.M.R. 926, 929 (N.C.M.R.1972).

 While the testimony of one witness indicates that "on the day of trial" the appellant said he knew the marijuana belonged to one of his passengers, there is no evidence of record to show the appellant knew of the drug or its ownership "at the time" of its discovery through a highly questionable gate search and its subsequent seizure.[1] Assuming the worst position to the appellant, that is, that he did know that the drug was in the possession of the passenger while he (the passenger) was being transported in the appellant's vehicle, the evidence of record remains sorely deficient in establishing that the appellant actually exercised or was able to exercise any dominion and control over the contraband at

---

1. We find the conduct of the military judge in this case as reflected in the record [R. 43] to be injudicious at best. The outburst directed at the witness, Cpl. W., was intemperate and smacks of an abuse of judicial decorum. Judges, not even military judges, may not pull military rank in the courtroom. If a witness is wrongfully refusing to testify or is guilty of other misconduct, there are appropriate judicial procedures available to resolve the problem. Threats as a military superior to a subordinate have no place in a court of law. We are further disturbed by the military judge's assumption of the prosecutorial role at several points in the trial. [R. 16, 17, 18, 36, 37, 38, 39, 42, 43, 44, 45, 50]. Such abandonment of the judicial function could have, in itself, caused reversal of this case.

that moment. While there are conceivable circumstances under which possession could be imputed to the driver of a vehicle even though the contraband is physically possessed by a passenger, the possibility of such circumstance does not convince beyond a reasonable doubt in this case where the factual predicate is absent.

As the government concedes in its brief to this court, it is "necessary to rely on a myriad of small pieces" in order to accept the findings in this case. We have carefully examined and weighed the "myriad of small pieces" the government urges us to consider, but we find their persuasive effect to fall far short of conviction beyond a reasonable doubt. Accordingly, while I am in accord with much of the philosophy expressed by the learned Judge Dunbar on the search and seizure issue raised through the questionable outgoing gate search, I need not address that issue at this juncture, since proof beyond a reasonable doubt as to the wrongful knowing possession of the drug is not established by the evidence of record.

Accordingly, the findings and sentence are set aside, and the charge is dismissed.

Judge GREGORY concurs.

DUNBAR, Judge (concurring opinion):

I would also set aside the findings and sentence on the additional grounds that the government has failed to show the reasonableness of the random search which recovered the contraband admitted into evidence as proof of appellant's guilt.

Appellate government counsel insist that although the "government has not found a reported case from this Honorable Court in which a random gate inspection in the United States was upheld, it is suggested that this apparent void stems from the fact that such inspections have been widely assumed to be valid." Citing *United States v. Glenn*, 22 U.S.C.M.A. 295, 46 C.M.R. 295 (1973), the government contends that a Navy Court of Military Review upheld a general gate inspection conducted at the Marine Corps Air Station, El Toro California, *United States v. Glenn*, No. 72 0489 (N.C.M.R. 10 July 1972).

Appellate government counsel, in support of the legality of random gate inspections, also cited the concurring opinion in *United States v. Poundstone*, 22 U.S.C.M.A. 277, 46 C.M.R. 277 (1973) wherein Judge Darden stated that a commanding officer of a military installation may without probable cause order the search of military personnel in vehicles leaving his base as a necessary part of his authority and responsibility for the security of his command.

With regard to the foregoing cases, however, it should be recognized that in the *Glenn* case the facts involved circumstances in which an individual had freely given consent to a search of his vehicle. The Court of Military Appeals in that case stated it was not necessary to consider the question as to whether the evidence was sufficient to demonstrate "reasonable cause" for the establishment of the gateway inspection system. In the case in which Judge Darden is quoted, the incident in question arose within a combat zone.

Accordingly, under the particular elements of this case, I would hold that random inspections of outgoing vehicles and personnel, without reasonable cause, within the United States, under peacetime conditions, are violative of the Fourth Amendment. By reasonable cause is meant some evidence to show that the base commander or his authorized representative, in ordering such an inspection, acted reasonably to: recover government property, prevent escapes from confinement or custody, ensure national security, or, had some other legitimate purpose in mind.

It is noted that although appellate government counsel argued ably in this case, they experienced some difficulty in relating the need for out-going gate inspections to national security.

Furthermore, I would carefully distinguish the elements of this case and its terminology from outgoing gate inspections relating to military dress as well as routine unannounced random barracks inspections properly conceived and executed as a means of providing for the general welfare of the

command by insuring readiness, security, orderliness, cleanliness, and to prevent the introduction or accumulation of items harmful to the integrity of the unit, e. g., drugs, prohibited weapons, explosives, etc.